No. 49,872

R. D. ANDERSEN CONSTRUCTION CO., INC., a Kansas Corporation, *Plaintiff*, v. W. KEITH WELTMER, Secretary of Administration for the State of Kansas; CARL OSSMANN, Director of Architectural Services for the State of Kansas; CURT T. SCHNEIDER, Attorney General for the State of Kansas, *Defendants.*

(577 P.2d 1197)

Opinion filed May 6, 1978.

*Stewart L. Entz,* of Colmery, McClure, Funk, Letourneau & Entz, of Topeka, argued the cause and was on the brief for the plaintiff.

*John R. Martin,* first assistant attorney general, argued the cause and *Curt T. Schneider,* attorney general, was with him on the brief for the defendants.

*Elwaine F. Pomeroy,* of Pomeroy & Pomeroy, of Topeka, was on the brief *amici curiae* for Douglas Construction Co., Inc.; Frisbie Bridge Co., Inc.; M. W. Watson, Inc.; Dahlstrom & Ferrill Construction Co., Inc.; Casson Construction Co., Inc.; and B. A. Green Construction Co., Inc., Kansas corporations.

*Stanley L. Basler,* of Blake & Uhlig, of Kansas City, was on the brief *amicus curiae* for Kansas Building and Construction Trades Council.

The opinion of the court was delivered by

McFARLAND, J.: This is an original action seeking a writ of mandamus to compel the opening of sealed bids which have been submitted for the construction of the Honey Bee Lodge and Hospital Care Facility at the Kansas Neurological Institute, a state owned and operated institution.

By virtue of the issues presented in this case, bidding on other state construction contracts was delayed until this case was resolved. Hearing of this matter was expedited by a preferential setting for argument upon joinder of the issues and stipulation of the facts. The case was briefed by the parties and *amici curiae* and was orally argued on March 28, 1978. A brief memorandum opinion was filed April 6, 1978, the same to be augmented by a

subsequent formal opinion. With this procedural background, we turn now to the formal opinion:

K.S.A. 44-201 provides:

" 'The current rate of per diem wages' for the intents and purposes of this act shall be the rate of wage paid in the locality as hereinafter [d]efined to the greater number of workmen, laborers or mechanics in the same trade, occupation or work of a similar nature. In the event that it be determined that there is not a greater number in the same trade, occupation or on similar work paid at the same rate, then the average rate paid to such laborers, workmen or mechanics in the same trade, occupation, or work shall be the current rate. The 'locality' for the purpose of this act shall be the county wherein the physical work is being performed: *Provided,* That where cities of the first or second class are located in said counties, each such city shall be considered a locality.

"Eight hours shall constitute a day's work for all laborers or other persons employed by or on behalf of the state of Kansas or any municipality of said state, except in cases of extraordinary emergency which may arise, in time of war, or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life. Laborers or other persons so employed, working to exceed eight hours per calendar day, shall be paid on the basis of eight hours constituting a day's work. Not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers or other persons so employed.

"And laborers and other persons employed by contractors or subcontractors in the execution of any contract or contracts with the state of Kansas or any municipality thereof shall be deemed to be employed by or on behalf of the state or such municipality so far as the hours of work and compensation herein provided are concerned.

"That the contracts hereafter made by or on behalf of the state of Kansas or by or on behalf of any county, city, township or other municipality of said state with any corporation, person or persons which may involve the employment of laborers, workmen or mechanics, shall contain a stipulation that no laborer, workman or mechanic in the employ of the contractor, subcontractor or other person doing or contracting to do the whole or a part of the work contemplated by the contract shall be permitted or required to work more than eight (8) hours in any one calendar day except in cases of extraordinary emergency (as defined in this act); such contract shall contain a provision that each laborer, workman or mechanic employed by such contractor, subcontractor or other person about or upon such public work shall be paid the wages herein provided: *Provided further,* That the provisions of this act in regard to hours worked per calendar day shall not apply to the construction, reconstruction, maintenance, or the production of local materials for: Highways, roads, streets, and also the structures and drainage in connection therewith; sewer systems; waterworks systems; dams and levees; canals, drainage ditches; airport grading, drainage, surfacing, seeding, and planting."

The specifications for the Honey Bee Lodge and Hospital Care Facility incorporated the provisions of K.S.A. 44-201 which require the contractor to pay its employees the "current rate of per

diem wages," as defined therein. Specific wage rates were not included in the specifications. This is the standard procedure on state contracts. The plaintiff and others submitted bids based on these specifications. Prior to the opening of the bids, the Attorney General advised the Director of Architectural Services and the Secretary of Administration that the specification requiring contractors to pay the "current rate of per diem wages" was not in compliance with K.S.A. 44-201 as the statute required the inclusion in the specifications of a detailed statement of the precise prevailing wage for each classification of workmen whose services would be required in the construction of the Honey Bee Lodge. The Attorney General further advised that the opening of the sealed bids should be deferred until the wage rates were determined, an appropriate addendum added to the specifications, and bidders afforded an opportunity to submit amended bids. The Director of Architectural Services subsequently returned the unopened bids. The plaintiff brings this action to compel the opening of the bids.

The plaintiff contends K.S.A. 44-201 is unconstitutionally vague and defies meaning and effect; is violative of the rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution; and infringes upon the contract rights of the citizens of Kansas. The plaintiff argues that, in effect, determining the current rate of per diem wage for each class of workmen is so difficult as to fail for vagueness. The constitutional arguments raised by the plaintiff are based on the statute *as interpreted* by the Attorney General. The plaintiff, in reality, is contending that the statute is unconstitutional if the Attorney General's *interpretation* is correct. With various modifications this law has been in effect since 1891. Originally criminal penalties were provided for violation of the eight-hour day provisions, but were not held applicable to the wage provisions (*State v. Blaser,* 138 Kan. 447, 26 P.2d 593 [1933]).

The Attorney General's interpretation of K.S.A. 44-201 would, for all practical purposes, expand the statute into a mini Davis-Bacon Act (40 U.S.C. § 276a *et seq.*). The Attorney General argues that this was the legislative intent all along although 87 years elapsed before such an "intent" surfaced in Attorney General Opinion No. 78-42. One of the many difficulties with this rationale is that the Davis-Bacon Act expressly mandates the setting

forth of wage scales in the specifications as well as how and by whom such determination shall be made, contrary to K.S.A. 44-201. Also, our original act was passed 40 years prior to the enactment of the Davis-Bacon Act.

K.S.A. 44-201 clearly intends that for each day a workman labors on a contract covered by the statute, he shall be paid the current per diem rate for the type of work he is performing. The previous actions before the court for violation of the statute primarily involve workmen who felt they performed work at less than the requisite wage or worked more than eight hours per day. The provisions contained in the statute are adequate for determining specific current rates of per diem wages on such controversies. The statute adequately serves this purpose and is a constitutionally valid enactment by the legislature.

The interpretation of K.S.A. 44-201 by the Attorney General which would require the specifications to include the current rate of per diem wages for each class of workmen who might be employed by the winning contractor and his subcontractors to work on the construction job is an erroneous and improper expansion of the statute beyond its clear meaning, import, and intent.

The Director of Architectural Services correctly applied the statute when he included in the specifications the statutory requirement that workmen be paid the current per diem wages and the sealed bids received thereon should have been opened. The plaintiff is entitled to a writ of mandamus.

Upon due consideration by a unanimous court, we conclude that: (1) K.S.A. 44-201 is a constitutionally valid enactment of the legislature; (2) the requirement in the specification that the contractor pay the "current rate of per diem wages" without enumerating specific wage rates was a correct application of the statute; (3) the interpretation by the Attorney General that K.S.A. 44-201 requires the inclusion of specific wage rates in bid specifications is erroneous; and (4) a writ of mandamus should be issued. Defendant Director of Architectural Services is ordered to proceed forthwith with the bidding process on the Honey Bee Lodge and Hospital Care Facility in accordance with conclusions reached herein.