FIRST NATIONAL BANCSHARES OF BELOIT, INC.; Jerome J. Eilert; Thomas H. Conroy; Frances Gronewoller; Robert L. Lampert; Phil G. Thull; F.W. Lampert Trust B; Andra V. Lampert; Frances Gronewoller as Custodian for Eric, Paul, and Aaron Lampert; and Robert D. Meats, Plaintiffs,

v.

Joseph S. GEISEL, Jr., Edward P. O'Connor, Terrence J. Lillis, Co–Trustees of Frances H. Giblin Trust No. 1; and Terrence J. Lillis, Guardian and Conservator of Frances H. Giblin, Defendants.

Civ. A. No. 92–4279–DES.

United States District Court, D. Kansas.

May 17, 1994.

As Corrected May 18, 1994.

Charles D. Green, Arthur, Green, Arthur, Conderman & Stutzman, Manhattan, KS, James L. Grimes, Jr., Foulston & Siefkin, Topeka, KS, for First Nat. Bancshares of Beloit, Inc.

Charles D. Green, Arthur, Green, Arthur, Conderman & Stutzman, Manhattan, KS, for Jerome J. Eilert, Thomas H. Conroy, Frances Gronewoller, Robert L. Lampert, Phil G. Thull, F.W. Lampert Trust B., Andra V. Lampert, Robert D. Meats.

Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, Kansas City, MO, M.J. Willoughby, Lawrence, KS, for Joseph S. Geisel, Jr.

Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, Kansas City, MO, for Edward P. O'Conner, Terrance J. Lillis.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the defendants seeking dismissal of several of the claims advanced by the plaintiffs (Doc. 97).

The plaintiffs, a bank holding company and its minority shareholders, initially filed this action in the District Court of Mitchell County, Kansas, on November 5, 1992. The defendants, the co-trustees of the Frances H. Giblin Trust No. 1 and the conservator of Frances H. Giblin,[1] removed the action to this court on the basis of diversity pursuant to 28 U.S.C. § 1332. The defendant trust was established in 1985 for the benefit of Frances H. Giblin during her lifetime, and it is presently the majority shareholder of plaintiff First National Bancshares of Beloit, Inc. ("the holding company"). The holding company in turn owns 100 percent of the stock of First National Bank of Beloit.

Plaintiffs assert eight different counts in their first amended complaint.[2] They essentially seek equitable relief in the form of specific performance of an alleged stock option agreement originally executed by Frances H. Giblin in 1982 and modified in 1989 by Frances H. Giblin individually and by the co-trustees of the trust. In the alternative, they seek specific enforcement of the 1982 option agreement. Plaintiffs also seek an injunction barring defendants from voting the trust's stock in the plaintiff holding company and prohibiting them from disposing of the stock.

The option agreement at issue purports to give the plaintiff holding company a first right and option to purchase the trust's stock in the holding company for a flat price of $1,898,803 within one year after the death of Frances H. Giblin. All parties agree that this figure significantly understates the present value of the trust's 770 shares,[3] which constitute 61 percent of the outstanding voting stock of the holding company. The remaining 39 percent of the outstanding stock is collectively owned by the minority shareholder plaintiffs to this action.

---

1. On March 21, 1991, Frances H. Giblin was determined legally incapacitated by the Probate Division of the Circuit Court of Jackson County, Missouri, where she presently resides.

2. Plaintiffs' motion to file a second amended complaint to modify paragraph 28 of the complaint was granted by Magistrate Judge Newman on September 23, 1993. The second amended complaint has not yet been filed. However, because paragraph 28 relates to Count IV of the first amended complaint (plaintiffs' shareholder derivative claim), which is not the subject of this motion to dismiss, there is no reason to delay disposition of this motion until the plaintiffs file their second amended complaint.

3. Defendants contend that the trust's stock is worth more than $4.5 million.

The defendants, who represent the interests of Frances H. Giblin, the lifetime beneficiary of the inter vivos trust, communicated their intent to the plaintiffs to revoke the option agreements. Plaintiffs bring this suit for anticipatory breach of contract on behalf of the holding company and as alleged third party beneficiaries of the option agreements. The minority shareholder plaintiffs also bring a shareholders' derivative action on behalf of the holding company, alleging that the defendants, as recently elected directors of the holding company, wrongfully refuse to take action in the interest of the corporation to enforce the option agreements against the trust. Further, plaintiffs seek a declaratory judgment holding that the 1989 option agreement is valid and enforceable at the present time. In the alternative, they seek a declaration that the 1982 option contract is binding against the conservator of Frances H. Giblin. The defendants have filed a counterclaim seeking a declaratory judgment to the effect that both the 1982 and the 1989 option contracts are unenforceable for lack of consideration.

The defendants seek dismissal of (1) all claims filed by the minority shareholder plaintiffs alleging they are third party beneficiaries of the option agreements, (2) the claim for anticipatory repudiation asserted in Count I of the amended complaint by all plaintiffs, (3) the claim for injunctive relief asserted in Count V of the amended complaint by all plaintiffs, and (4) the claim asserted in Count V of the amended complaint denominated "Conservator May Not Revoke Options." As the court interprets the motion, the defendants seek dismissal of each of the claims as a matter of law pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.[4]

■ The court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief.

*Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *Mangels v. Pena,* 789 F.2d 836, 837 (10th Cir.1986). In considering a motion to dismiss for failure to state a claim, "[a]ll well-pleaded facts [asserted in the complaint], as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### *Third Party Beneficiary Claims*

The defendants' first argument is that the minority shareholder plaintiffs are not third party beneficiaries of the option agreements in question, and therefore each of the claims brought by them in their individual capacities, and not on behalf of the holding company, should be dismissed.

■ Recent Kansas caselaw analyzing the law of third-party contract beneficiaries divides them into the general classes of intended beneficiaries and incidental beneficiaries. *Noller v. GMC Truck and Coach Div.,* 244 Kan. 612, 772 P.2d 271, 275 (1989) (citing *Fasse v. Lower Heating and Air Conditioning, Inc.,* 241 Kan. 387, 736 P.2d 930 (1987)). A beneficiary may sue to enforce a contract made by others only if he is an intended beneficiary, *i.e.,* one who the contracting parties intended should receive a direct benefit from the contract. *Id.,* 772 P.2d at 275; *Martin v. Edwards,* 219 Kan. 466, 548 P.2d 779, 785 (1976).

■ The determination of the contracting parties' intent as to the rights of a third party beneficiary is a question of contract construction for the court, and the general rules of contract construction apply. *Id.*

---

4. The court notes that the defendants have filed a separate motion for summary judgment, including numerous exhibits, with regard to the remaining claims asserted by the plaintiffs. *See*

Doc. 128. For purposes of deciding the pending motion to dismiss, the court will not consider materials other than the pleadings and their attachments. *See* Fed.R.Civ.P. 12(b).

The meaning of the contract and the intent of the parties are to be deduced by the court from the instrument itself, as long as its terms are plain and unambiguous. *Cornwell v. Jesperson,* 238 Kan. 110, 708 P.2d 515, 521 (1985); *Martin v. Edwards,* 548 P.2d at 785–86. In this case, the court determines that the option agreements [5] are clear and unambiguous; hence there is no need to consider the facts and circumstances surrounding their execution in order to clarify the parties' intent. *See id.* at 786.

Contracting parties are presumed to act for themselves. *Id.* at 785; *Ronnau v. Caravan Intern. Corp.,* 205 Kan. 154, 468 P.2d 118, 122 (1970). Therefore the parties' intent to benefit a third person must be clearly expressed in the contract. *Id.; see Fasse v. Lower Heating and Air Conditioning,* 736 P.2d at 932; *Martin v. Edwards,* 548 P.2d at 785; *see also United States v. United Services Automobile Ass'n,* 968 F.2d 1000, 1001–02 (10th Cir.1992) (applying Kansas law). It is not necessary, however, for the third party to be the exclusive beneficiary of the contract; it may benefit the contracting parties as well. *Fasse,* 736 P.2d at 932; *Martin,* 548 P.2d at 785. Nor is it necessary for the third party beneficiary to be personally named in the contract, if he is a member of a designated class or otherwise identifiable as a person intended by the parties' language to benefit from the contract. *Hartford Fire Ins. Co. v. Western Fire Ins. Co.,* 226 Kan. 197, 597 P.2d 622, 632 (1979). However, the third party must show the existence of a provision in the contract that operates to his benefit. *Id.; see United States Automobile Ass'n,* 968 F.2d at 1002.

In order to determine whether a particular individual is an intended beneficiary of a contract, the court must determine whether the contract provides to that individual a direct benefit by the terms of the agreement. *Fasse,* 736 P.2d at 933. Neither option agreement in this case includes any language expressly designating any of the plaintiffs individually, or the minority shareholders generally, as intended beneficiaries. The option agreements simply provide an exclusive right to the holding company to exercise an option, within one year after Mrs. Giblin's death, to acquire the 770 shares presently owned by the inter vivos trust. The clear and unambiguous language of the option agreements does not reveal an intent by the parties to directly benefit any or all of the minority shareholders of the holding company.[6] In fact, both option agreements include a provision clearly indicating that the option is personal to the holding company. Therefore, under Kansas law, the minority shareholder plaintiffs are not intended beneficiaries. Consequently, while the minority shareholders may be incidental third party beneficiaries, they are not entitled as such to bring suit to obtain the benefits of the option contracts. *Noller v. GMC Truck and Coach Div.,* 772 P.2d at 275; *Wilson–Cunningham v. Meyer,* 16 Kan.App.2d 197, 820 P.2d 725, 731 (1991), *rev. denied* (1992).

Because the minority shareholder plaintiffs are not intended beneficiaries as a matter of law, their claims as third party beneficiaries of the option agreements must be dismissed for failure to state a claim upon which relief may be granted. Consequently, the court will dismiss the claims asserted by the minority shareholder plaintiffs in their capacities as third party beneficiaries of either or both option agreements in Counts I, II, V, VI, and VIII. However, the court will not dismiss the claims brought by the minority shareholders on the theories of implied contract (Count III) and promissory estoppel (Count VII), since these theories of recovery may support claims by some or all of the minority shareholder plaintiffs as contracting parties. The minority shareholders are entitled to offer evidence in support of their

---

5. Copies of the 1982 and 1989 option agreements are attached to the plaintiffs' original complaint. Although duplicate copies were not physically attached to the first amended complaint, it refers to the option agreements as attachments.

6. Even assuming, without deciding, that the contracting parties knew the minority shareholders would benefit from the contract, such knowledge is not sufficient to establish intent to benefit the minority shareholders. *See Noller,* 772 P.2d at 275 (citing *Corrugated Paper Products, Inc. v. Longview Fibre Co.,* 868 F.2d 908, 912, 914 (7th Cir.1989)).

claims that the defendants are liable to them directly for breach of contract. *See, e.g., Mai v. Youtsey,* 231 Kan. 419, 646 P.2d 475, 479 (1982) (implied contract); *Patrons Mutual Ins. Ass'n v. Union Gas System, Inc.,* 250 Kan. 722, 830 P.2d 35, 39 (1992) (promissory estoppel); *Riffel v. Dieter,* 159 Kan. 628, 157 P.2d 831, 840 (1945) (equitable estoppel).

### Anticipatory Repudiation Claim

Defendants next argue that Count I, which asserts a claim by all of the plaintiffs for anticipatory repudiation, should be dismissed. They argue that plaintiffs are not entitled to immediate relief, and that the plain language of both option agreements includes an express condition precedent that neither option can be exercised until after the death of Frances Giblin.

It is undisputed that on two occasions in 1992 defendants communicated their intent to revoke the option agreements. Plaintiffs allege that this amounts to repudiation of the option agreements, that the option agreements were supported by consideration and are hence irrevocable, and that plaintiffs are therefore entitled to bring an action for anticipatory breach. They seek relief in the form of specific performance of the 1989 option agreement, contending that they have no adequate legal remedy. If for any reason the court determines the 1989 agreement to be invalid, the plaintiffs in the alternative seek specific performance of the 1982 option agreement.

■ The doctrine of anticipatory repudiation permits a party to bring suit for breach of contract in advance of the time the contract calls for the other party to perform, if the other party has repudiated the contract. *See* John D. Calamari & Joseph M. Perillo, *The Law of Contracts* 521 (3d ed. 1987) [hereinafter *Calamari on Contracts* ]. In this case, there is no genuine dispute that the defendants have repudiated the option agreements by communicating to the plaintiffs their intent to revoke. The issue in this case is whether the plaintiffs are entitled to bring suit for anticipatory breach of contract to enforce an option contract that is expressly conditioned upon the death of Frances H. Giblin, who is still living.

The defendants rely on *Cornett v. Roth,* 233 Kan. 936, 666 P.2d 1182 (1983), arguing that the doctrine of anticipatory repudiation applies only to contracts in which there are mutual and interdependent obligations. In *Cornett,* the Kansas Supreme Court held in essence that the doctrine applies only to bilateral executory contracts, under which contractual obligations remain to be performed by both parties to the contract. *See* 666 P.2d at 1188–89.

The court does not agree with the defendants' assertion that the option agreements in question do not involve mutual and interdependent obligations. The agreements require the defendants to transfer their 770 shares in the bank holding company in exchange for payment of a sum of money by the plaintiff holding company within one year after the death of Frances Giblin, assuming the holding company elects to exercise its option to purchase the shares. Neither party to the agreement has performed their respective contractual obligations. *Cornett v. Roth* simply holds that the doctrine of anticipatory repudiation does not permit immediate suit by a party who has fully performed on a note that is not yet due under the contract. *Id.,* 666 P.2d at 1188–90. As such, it does not assist in resolving the dispute presently before this court, which involves an option contract with a condition precedent under which the respective parties have made mutual promises and neither party has yet performed.

■ However, the defendants are correct in arguing that the relief claimed by the plaintiffs for anticipatory repudiation is not available as a matter of law. A condition precedent is any act or event, other than a lapse of time, which must exist or occur before a duty to perform a promise arises. *Calamari on Contracts* 439 (3d ed. 1987). Both the 1982 and the 1989 option agreements are contingent upon the death of Frances H. Giblin, which is a condition precedent to the duty of the defendants to honor the option agreements. The condition precedent precludes the plaintiffs from obtaining specific enforcement of the option contracts in question on a claim of anticipatory breach.

*See Wallerius v. Hare,* 194 Kan. 408, 399 P.2d 543, 547 (1965) (condition precedent must have happened before the contract can be enforced or relief sought in the form of specific performance).

If this court were to order specific performance during the lifetime of Frances Giblin, it would in effect be rewriting the agreement between the parties, which expressly provides that the holding company's right to exercise the option is limited to the period within one year after her death. During her lifetime, she is the beneficiary of the trust that presently owns the 770 shares. Prior to the establishment of the trust, she was the owner of the 770 shares. The intent of the parties is clear from the face of the option agreements that the beneficial interest in the shares in question is to remain with Frances H. Giblin during her lifetime. Under the particular agreements in question, therefore, the plaintiffs have not stated a claim for anticipatory breach upon which the requested relief of specific performance may be granted. The claim for anticipatory repudiation will therefore be dismissed.

### Injunctive Relief Claim

■ Defendants contend that Count V of the amended complaint should be dismissed for failure to state a claim. Count V asserts a claim for various types of injunctive relief, but does not assert any grounds for requesting such relief. In response, the plaintiffs contend that if granted specific performance, they would be entitled to "an equitable decree directing such enforcement. . . ." Consequently, Count V is apparently a specific request to the court to fashion an equitable remedy to enforce one or both option agreements.

As the court has already determined, the plaintiffs are not entitled to bring suit at this time for specific performance, because the condition precedent for both option contracts has not yet occurred. Therefore, plaintiffs may not seek injunctive relief to enforce either or both option contracts. Furthermore, Fed.R.Civ.P. 8(a)(2) provides that a claim for relief must include a statement of the claim showing that the pleader is entitled to relief, in addition to the demand for judgment for the relief the pleader seeks. The

court construes Count V as a request for alternative or more specific relief on the claim of anticipatory repudiation alleged in Count I. Since Count V does not state a claim for relief separate from Count I, it too will be dismissed for failure to state a claim upon which relief may be granted.

### "Conservator May Not Revoke Options" Claim

■ Finally, defendants argue that Count VIII of the complaint should be dismissed. Count VIII alleges that the 1982 option contract was not assigned by Frances Giblin to the inter vivos trust prior to the time she was declared legally incompetent, and that the purported revocation of the 1982 option agreement by the co-trustees of the trust was therefore ineffective since the option agreement was never owned by the trust. Further, plaintiffs argue that Terrence Lillis, in his capacity as the conservator for Frances H. Giblin, does not have the legal power to revoke the 1982 option agreement on her behalf. Consequently, plaintiffs contend that if the 1989 option agreement is held invalid for any reason, the 1982 option agreement is nevertheless valid and may be enforced against the conservatorship.

The 1982 option agreement was executed by Frances H. Giblin. In 1985 when the trust was created, specified assets were transferred to the trust. The 1982 option agreement was not an asset of Mrs. Giblin's estate, but rather a contingent obligation. The 1982 option agreement therefore continued as a binding obligation against Frances Giblin individually. However, in 1989, the modified option agreement was executed not only by Frances H. Giblin as a co-trustee of the inter vivos trust established in 1985, but also by Frances H. Giblin individually. The language of the 1989 agreement clearly provides that it amends, supplements, and supersedes the 1982 agreement. Therefore, assuming the 1989 option agreement is enforceable, the 1982 agreement has been superseded and Count VIII would be moot.

The court views Count VIII as a claim in the alternative. *See* Fed.R.Civ.P. 8(a). If the court were to hold the 1989 option unenforceable in its entirety, it is at least arguable that it would not have superseded the 1982 option agreement. If the 1982 option

**1344**

agreement is still in effect, the plaintiffs argue in Count VIII that it was never transferred to the trust and the co-trustees therefore lack authority to revoke it. They further argue that the conservator of the estate lacks the power to revoke it.

Construed liberally, Count VIII is an alternative claim seeking a declaratory judgment. For the reasons stated previously, the 1982 option agreement could not be enforced against the conservatorship at this time, even assuming that it is otherwise valid. However, the plaintiffs have a right to present evidence to support their alternative claim that Terrence Lillis in his capacity as conservator lacks the power to revoke the 1982 option agreement on behalf of Frances H. Giblin.[7] *See* 28 U.S.C. § 2201(a). To the extent that Count VIII seeks a declaratory judgment as to whether the 1982 option agreement has been superseded by the 1989 option agreement and if not, whether Terrence Lillis has the power to revoke it on behalf of Frances Giblin, plaintiffs may present evidence in support of their claim. The court emphasizes, however, that even if the court were to hold that the 1982 option agreement remains in effect, plaintiffs are not entitled to seek specific enforcement of the 1982 option agreement at this time.

**IT IS BY THE COURT THEREFORE ORDERED** that defendants' motion to dismiss (Doc. 97) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the claims of plaintiffs Jerome J. Eilert; Thomas H. Conroy; Frances Gronewoller; Robert L. Lampert; Phil G. Thull; F.W. Lampert Trust B; Andra V. Lampert; Frances Gronewoller as Custodian for Eric, Paul, and Aaron Lampert; and Robert D. Meats in their capacities as third party beneficiaries of the 1989 and/or 1982 option agreements, as asserted in Counts I, II, V, VI, and VIII of the first amended complaint, are hereby dismissed.

**IT IS FURTHER ORDERED** that Count I of the first amended complaint, asserting a

claim on behalf of all plaintiffs for anticipatory repudiation, is hereby dismissed.

**IT IS FURTHER ORDERED** that Count V of the first amended complaint, seeking injunctive relief on behalf of all plaintiffs, is hereby dismissed.

**IT IS FURTHER ORDERED** that Count VIII of the first amended complaint is dismissed to the extent that it seeks specific enforcement of the 1982 option agreement, provided that plaintiff First National Bancshares of Beloit, Inc., may pursue a declaratory judgment with regard to whether Terrence Lillis has the power to revoke the 1982 option agreement on behalf of Frances H. Giblin.

7. The court notes that the parties dispute whether Kansas law or Missouri law applies to determine the powers of Terrence Lillis as the conservator for Frances H. Giblin. The court finds it unnecessary to determine at this time which state's law controls this issue. The court determines only that the plaintiffs have a right to present evidence to support their alternative claim for a declaratory judgment that Lillis, in his capacity as conservator, lacks the power to revoke the 1982 option agreement.